# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 3:21-CR-525 |
| v. | ) | |
| | ) | **REPLY IN SUPPORT OF MOTION** |
| JEFFREY ALAN BENJAMIN | ) | **FOR DISCLOSURE OF GRAND** |
| | ) | **JURY MATERIALS AND TO** |
| Defendant. | ) | **COMPEL DISCOVERY OF** |
| | ) | **DOCUMENTS RELATED TO THE** |
| | ) | **FBI'S INTERVIEWS OF DANIEL** |
| | ) | **RODERICK** |

## INTRODUCTION

The government's opposition to Mr. Benjamin's Motion for Disclosure of Grand Jury Materials and to Compel Discovery of Documents Related to the FBI's Interviews of Daniel Roderick ("Discovery Motion") ignores the relevant facts and misconstrues the applicable legal standards. Mr. Benjamin's discovery requests are not based, as the government argues, on "speculative accusations" or "conjecture," but on specific evidence that shows Agent Hawkins' memorandum summarizing his July 14, 2021 interview of Mr. Roderick (the "Roderick 302") was, at best, an inaccurate reflection of Mr. Roderick's statements and gave a misleading impression of Mr. Roderick's personal knowledge about Mr. Benjamin—a material misimpression that the government has repeatedly failed to correct despite the requests of Mr. Roderick's counsel. This alone provides sufficient basis for discovery of the transcript of Agent Hawkins' grand jury testimony under Fed. R. Crim. P. 6(e)(3)(E)(ii). Further, the discrepancy between the Roderick 302 and Mr. Roderick's actual personal knowledge and his actual recollection of the interview justifies discovery of the underlying notes and communications related to Mr. Roderick's FBI interview under Rule 16 and *Brady*.

The government does not dispute that the mischaracterization of Mr. Roderick's statement, if it was presented to the grand jury, would be grounds for a motion to dismiss the indictment. Nor does it dispute that, if the underlying notes and communications related to Mr. Roderick's interview show that the Roderick 302 is not an accurate reflection of Mr. Roderick's statements and understanding, such information would be material and exculpatory. Instead, the government disregards the specific evidence underlying Mr. Benjamin's request in an effort to paint it as a fishing expedition and offers *in camera* review of the grand jury transcript and underlying notes of the Roderick 302 to show that "the grand jury did not hear the substance of those statements." Gov't Opp. Mem. at 1. The government thus does not contest the substance of Mr. Benjamin's concern about the mischaracterization of Mr. Roderick's testimony, and its proposal for *in camera* review of both requested sets of documents is a tacit acknowledgment that Mr. Benjamin *has* demonstrated a particularized need for the requested materials. Such review is unnecessary and would needlessly burden the court and delay Mr. Benjamin's ability to raise a substantive challenge to the indictment. Judicial economy favors a more efficient resolution. The government has not offered any specific reason why Mr. Benjamin's counsel should not be allowed to inspect the materials and determine their significance without further briefing or judicial intervention—indeed, the Court has already entered a Standing Order Governing Discovery (Dkt. 6) that would allow the government to share the grand jury materials with Mr. Benjamin. Notwithstanding, if the Court determines that *in camera* review would be beneficial, Mr. Benjamin respectfully requests an *ex parte* hearing with the Court to discuss the significance of the sought materials and aid the Court in evaluating whether those materials are potentially exculpatory and subject to disclosure.

**ARGUMENT**

The government's opposition begins with a misstatement of the facts surrounding this dispute and continues with misstatements of its own discovery obligations. Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows Mr. Benjamin access to the grand jury transcripts because he has demonstrated particularized, factual grounds that substantiate the existence of irregularities before the grand jury that may support a motion to dismiss the indictment. *See United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (4th Cir. 2004). Further, the government cannot identify any specific reason that it should retain sole possession of the grand jury transcript at this stage, when the grand jury's work is complete, an order has already been entered in this case authorizing disclosure of grand jury materials to Mr. Benjamin, and when the government has already selectively produced some grand jury records to Mr. Benjamin.

The government must also produce any documents, including rough notes, taken by those who attended Mr. Roderick's FBI interviews under Rule 16, *Brady*, and *Giglio*. The government's answer—that it need not disclose these materials until it is obliged to do so under the Jencks Act—ignores the basis for Mr. Benjamin's motion and the fact that its discovery obligations extend beyond producing Jencks material.

**I.     The Government Ignores the Factual Basis for Mr. Benjamin's Requests.**

The government incorrectly argues that Mr. Benjamin's discovery requests are based on mere speculation. This ignores the detailed facts laid out in the Discovery Motion, which set forth a particularized factual basis to believe that the testimony of the government's sole grand jury witness was materially inaccurate and likely misled the grand jury in its decision to indict. Specifically, Agent Hawkins wrote in the 302 for Mr. Roderick's July interview that:

> Roderick agreed that from the [cease and desist letter], either June-June was the result of a rebaselined schedule, the rebaseline was ongoing, or the schedule was

3

> not being rebaselined. If the latter, then WEC had lied to [the] Owners about providing a rebaselined FIRLS.
>
> …
>
> Roderick believes that around the time of the [cease and desist letter], Benjamin and Churchman had lied to him about what was being done with the schedule. Certainly by that time there was enough information about the schedule where WEC needed to "dig in deeper to see what was going on."

Dkt 49-2, at 9. This is not, however, what Mr. Roderick said. Mr. Ellerman sought correction of the record via telephone and in an email on January 13, 2022. (Dkt. 56-2 at 3.) And Mr. Roderick has declared, as he has maintained from day one: "I believed and continue to believe the Mr. Benjamin's interests are not adverse to mine," and "I have never had direct personal knowledge of any facts that I believe indicated any criminal culpability on the part of Mr. Benjamin. (Dkt. 48-14 at ¶ 12.) The government took no action to correct the inconsistency.

The government does not contest that there is a material difference between the Roderick 302's summary of Mr. Roderick's statements about being "lied to" by Mr. Benjamin and Mr. Churchman and what Mr. Roderick actually believes, as communicated to the government by his counsel: that this key passage of the Roderick 302 "does not accurately describe [his] recollection or belief" and that Mr. Roderick in fact never concluded that "Benjamin … had lied to him." Dkt. 56-2 at 3. Nor does the government's opposition dispute that the quoted passage from the 302 creates a "potential misimpression" about Mr. Roderick's testimony. *Id.*

Rather than argue the substance of Mr. Ellerman's concerns about the inaccuracy of the Roderick 302, the government tries to ignore them entirely by pointing out that Mr. Ellerman was present during the FBI interview, that the 302 was not finalized until after the grand jury's indictment, and that the defense contests but a "fragment" of the Roderick 302. None of this has any bearing on Mr. Benjamin's need to review the grand jury transcripts and the 302 materials requested in the Discovery Motion. Mr. Ellerman's presence at the FBI interview does not undermine but rather lends credence to his objections—he has firsthand knowledge of Mr.

Roderick's statements and knows that the Roderick 302 is inaccurate in its characterization of those statements. Indeed, the government studiously avoids saying in its response that Mr. Ellerman or Mr. Roderick actually *saw* the final Roderick 302 or approved of the specific language in question before it was finalized. Further, the fact that the 302s were not finalized until after the grand jury proceedings actually heightens Mr. Benjamin's need for the requested documents, as it casts doubt on which version of Mr. Roderick's statements the grand jury may have heard. Moreover, the government fails to explain why it matters that Mr. Benjamin bases his request on the one part of the 302 he currently knows is inaccurate. The government has an obligation to present accurate testimony. The Roderick 302 does not accurately portray Mr. Roderick's testimony.[1] Rather than correct this error, the government objects that it is being "attack[ed]" and accused of "prosecutorial misconduct." (Dkt. 83 at 3.) In reality, it is the government's unfounded implications of misconduct in response to Mr. Ellerman's January 13, 2022, email—and in support of its wasteful effort to disqualify Mr. Benjamin's counsel—that led to the instant motions practice. (Dkt. 83-1 at 1-2).

Remarkably, the government now attempts to dodge the issue of its mischaracterization of Mr. Roderick's statements entirely by representing to the Court that "the grand jury did not hear the substance of those statements." Gov't Opp. at 1. But mere months ago, the government presented these very statements as the basis for its failed motion to disqualify Mr. Benjamin's counsel, stating that "based in part upon Roderick's statement, Benjamin was indicted by the grand jury on multiple counts of conspiracy, wire fraud, and securities fraud." Dkt. 48 at 2. The

---

[1] Indeed, the Roderick 302 shows that Agent Hawkins relies heavily on hypotheticals designed to elicit evidence favorable to the government, rather than questions aimed at understanding the witness's personal knowledge. This mode of interrogation likely contributed to multiple misimpressions and inaccuracies before the grand jury.

5

government cannot have it both ways. The government's two irreconcilable positions—taken only a few months apart—make it even more crucial that Mr. Benjamin now have access to the grand jury transcript to ascertain what exactly was relayed to the grand jury about Mr. Roderick's potential testimony and how the government's mischaracterization of that testimony may have affected the grand jury's decision to indict Mr. Benjamin.

## II.     Mr. Benjamin Need Only Show a Particularized, Factual Basis to Believe There Was a Grand Jury Irregularity in Order to Receive Access to the Requested Grand Jury Transcripts, and He Has Done So.

The government misstates the standard for disclosure of grand jury materials under Federal Rule of Criminal Procedure 6(e). The government cites an inapposite case to argue that Mr. Benjamin bears an insurmountable "heavy burden" of demonstrating grand jury irregularity, but the government's cited authority did not even involve an allegation of irregularity, much less the factual basis to believe the grand jury heard mischaracterized, material facts like those present here. (Dkt. 83 at 5-6); *United States v. Harris*, No. 5:07-CR-22, 2017 WL 1724298, at *5 (N.D.W.Va. June 14, 2007) (denying motion for grand jury materials because the "[d]efendant simply want[ed] to obtain evidence he does not have" but made no allegation of irregularity). To the contrary, Rule 6(e) only requires Mr. Benjamin to show that "particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (4th Cir. 2004) (quoting *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992)); *see also Dennis v. United States*, 384 U.S. 855, 872 (1996) ("[I]t cannot be fairly said that the defense has failed to make out a 'particularized need.' The showing made by petitioners…goes substantially beyond the minimum required by Rule 6(e)."). No more is required, especially when the government offers no countervailing rationale and admits that it will likely need to produce the grand jury transcript eventually pursuant to the Jencks Act.

6

Contrary to the government's contentions, Mr. Benjamin's request is not based on speculation or general allegations of misconduct, but a particularized, factual showing that suggests the grand jury was incorrectly told by Agent Hawkins that Mr. Roderick believes he was lied to by Mr. Benjamin about the project schedule. Notwithstanding the government's attempts to backpedal its previous reliance on this inaccurate characterization of Mr. Roderick's statements, the government previously conceded that the grand jury indicted Mr. Benjamin "based in part" on this very statement. (Dkt. 48 at 2.) This is not a speculative fishing expedition for undefined misconduct: either Agent Hawkins testified consistently with his 302 and misled the grand jury, or he did not, and the grand jury transcript is an exculpatory inconsistent statement that the government must produce pursuant to its *Brady*/*Giglio* obligations. This is true even if, as the government now claims, no version of Mr. Roderick's statement was communicated to the grand jury at all, given the government's previous representation that this statement was material to the grand jury's decision to indict. Further, the government does not dispute that, if Agent Hawkins did indeed testify consistently with the Roderick 302 and mischaracterized Roderick's statement to the grand jury, then that mischaracterization would potentially be a ground to dismiss the indictment. Nothing about this request is speculative or conjectural—it is based on concrete evidence that the grand jury was likely misled about a fact material to the decision to indict.

The cases cited by the government in which requests for grand jury transcripts were denied as too speculative are, in fact, demonstrative of how far Mr. Benjamin's particularized request is from the type of fishing expedition that courts have previously rejected. For instance, *United States v. Harris* involved a request for grand jury testimony that was not based on any "statement of an irregularity before the grand jury" and was instead a case where the defendant

7

"simply want[ed] to obtain evidence he [did] not have." No. CRIM.A.5:07-CR-22, 2007 WL 1724298, at *5 (N.D.W. Va. June 14, 2007). Similarly, the court in *United States v. Loc Tien Nguyen* denied a request to disclose grand jury information because the defendant did not provide "affidavits or other proffered evidence" and did "not present[] one shred of evidence to support an allegation of grand jury irregularity or misconduct." 314 F. Supp. 2d 612, 616 (E.D. Va. 2004). The government's cases at most stand for the proposition that disclosure of grand jury transcripts is unwarranted where a defendant does not produce any evidence of a particular irregularity or misconduct. This is not the case here, because Mr. Benjamin's request is based on specific evidence that the grand jury may have heard a misleading and inaccurate characterization of Mr. Roderick's interview statements.

Moreover, the government does not contest that Agent Hawkins was the sole grand jury witness, nor does it attempt to refute that the decision to rely solely on an agent's witness summaries rather than witness testimony is "inherently suspect." *United States v. Mahoney*, 495 F. Supp. 1270, 1276 (E.D. Pa. 1980); *United States v. Estepa*, 471 F.2d 1132, 1137 (2d Cir. 1972). The government objects to Mr. Benjamin's "broad" request for the entirety of Agent Hawkins' grand jury testimony, but it was the government that decided to rely solely on Agent Hawkins' summary testimony—a decision for which it has offered no rationale—and it was the government that failed to present Mr. Roderick himself to the grand jury. Had the government chosen to present Mr. Roderick's testimony to the grand jury, there would be no question as to whether Agent Hawkins accurately characterized Mr. Roderick's statements, and this entire dispute could have been avoided. All Mr. Benjamin seeks now is the inherently suspect, hearsay testimony upon which he was indicted. There is no way in which Mr. Benjamin can narrow his request when he seeks the testimony of the government's sole grand jury witness. If the

government thinks Mr. Benjamin's request is overbroad, that is a problem entirely of the government's making.

Further, the government's general argument for maintaining grand jury secrecy at this stage ignores the specific facts of this case. The Court has already authorized disclosure of grand jury materials to Mr. Benjamin (*see* Dkt. 6), and the government has already produced a selection of grand jury records (but no transcripts of the grand jury proceedings) in response to Mr. Benjamin's Rule 16 discovery requests. As a matter of law, the Court has already approved Mr. Benjamin's access to the grand jury material, and the government has simply chosen to exercise its discretion to selectively withhold key portions of the grand jury record—the transcripts of witness testimony—rather than being fully transparent and producing the entire grand jury record, as is common practice in at least some divisions in this District.

Mr. Benjamin has satisfied Rule 6(e)'s requirements to obtain the requested grand jury transcripts. The Court should reject the government's attempt to ignore the amply demonstrated factual basis of Mr. Benjamin's request in an effort to mischaracterize it as a fishing expedition.

### III.     Mr. Benjamin is Entitled the Underlying Notes and Correspondence Related to Mr. Roderick's FBI Interviews.

The government misstates Mr. Benjamin's arguments for discovery of the notes, communications, and other records relevant to the creation of the Roderick 302s (the "302 Materials"). Mr. Benjamin does not request the 302 Materials because he "disagrees with a portion of the final 302[,]" but because, as explained above, he has a factual basis to believe that the Roderick 302s materially differ from what Mr. Roderick actually said during his interview. If the 302 Materials reflect this inconsistency or show an effort by the government to shape Mr. Roderick's statements or mischaracterize them after the fact, they would be unquestionably material and exculpatory.

9

Moreover, the government's accusation that Mr. Benjamin is relying on a "disagreement" with a "fragment of the 302's to demand sweeping discovery" is incorrect. (Dkt. 83 at 9.) Mr. Ellerman's email did not just contest a minor "fragment" of the Roderick 302, but a *central* piece pertaining to the key statements the government relied upon in portraying Mr. Roderick as an adverse witness. Mr. Roderick and Mr. Ellerman did not become aware of this mischaracterized "fragment" until the government made that "fragment" the cornerstone of its argument that Mr. Roderick would be an adverse witness to Mr. Benjamin. The fact that Mr. Roderick has not raised broader objections to the accuracy of the Roderick 302 does not imply that every other portion is accurate, nor is it practical for Mr. Benjamin to seek discovery of only those notes or correspondence that relate to the one portion of the statements Mr. Benjamin knows to be inaccurate. Discovery of all notes and communications related to the Roderick 302 is the only way to ensure all potentially exculpatory information is produced in accordance with the government's discovery obligations.

As with Mr. Benjamin's request for grand jury materials, the government cites inapposite case law to argue that Mr. Benjamin's request for the 302 Materials is speculative or conjectural. But none of the cases cited by the government involved the kind of particularized need supported by specific evidence that is present here. *See United States v. Jones*, 378 F. App'x 359, 360 (4th Cir. 2010) (affirming district court's denial of request for notes where defendant "only speculated" that they contained exculpatory information and the notes were immaterial regardless); *United States v. Michaels*, 796 F.2d 1112, 1115-16 (9th Cir. 1986) (affirming district court's denial of request for notes where defendant had "no basis" to believe that interview summaries were inaccurate); *United States v. Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 203 (3d Cir. 1970) (holding "mere speculation about materials in the government's files"

insufficient to warrant disclosure). Unlike the defendants in the government's cases, Mr. Benjamin is not merely speculating about potential inaccuracies in the Roderick 302—there is direct evidence that the Roderick 302 is not an accurate reflection of Mr. Roderick's statements.

Similarly, the government argues that the Jencks Act does not require it to produce notes that are later incorporated into a 302, but this argument ignores that (1) Mr. Benjamin's request is not based on the Jencks Act, but on the government's broader obligations under Rule 16, *Brady,* and *Giglio*; and (2) producing the final 302s only satisfies the government's obligations when the 302s "accurately reflect[] the contents of the interviewer's rough notes." *United States v. Brown*, 303 F.3d 582, 591 (5th Cir. 2002). The government's argument ignores the crux of the issue here: Mr. Ellerman's efforts to correct the inaccuracy of the Roderick 302 and the government's refusal to make any changes create a reasonable basis to believe that the Roderick 302 does not accurately reflect what was said during Mr. Roderick's interview—a discrepancy that may be reflected in the rough interview notes or explained by the communications that led to the finalizing of the inaccurate Roderick 302 months after both the interview and Mr. Benjamin's indictment.

Even if the government disputes the materiality or weight of Mr. Roderick's statements, the law requires the government to err on the side of disclosure in matters pertaining to *Brady* or *Giglio* material; and it is a clear violation of due process for the government to refuse disclosure of "evidence favorable to an accused upon request." *United States v. Ellis*, 121 F.3d 908, 914 (4th Cir. 1997); *United States v. Bartko*, 728 F.3d 327, 342 (condemning prosecution for "ignor[ing] false testimony") (4th Cir. 2013); *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) (holding that the government may not "withhold admittedly favorable evidence whenever the prosecutors, in their wisdom, conclude that it would not make a difference to the

11

outcome of trial"). Thus, "the government must always produce any potentially exculpatory or otherwise favorable evidence" and "cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial." *Safavian*, 233 F.R.D. at 16. It is therefore irrelevant that the government disagrees as to whether the mischaracterization of Mr. Roderick's testimony is material or exculpatory—Mr. Benjamin has identified potentially favorable evidence, and the government is required to disclose these materials regardless of whether it believes disclosure will affect the eventual disposition of this case.

      The 302 Materials are clearly *Brady* evidence, and the government is obligated to disclose them. Courts around the country have required the government to disclose interview notes where they contained exculpatory information. *See, e.g.*, *United States v. Park*, 319 F. Supp. 2d 1177, 1179 (D. Guam 2004); *United States v. Pelullo*, 105 F.3d 117, 123 (3d Cir. 1997)[2]; *United States v. Anderson*, 36 F. Supp. 2d 1264, 1268 (D. Kan. 1998).[3] The government's representation that it reviewed the 302 notes and found them not to be exculpatory is irrelevant; it would defeat the very purpose of *Brady* to adopt the government's argument that it must only disclose *Brady* material when it agrees that the information is exculpatory, despite a defendant's specific request. *See Park*, 319 F. Supp. at 1178 ("[T]he suppression by the prosecution of *evidence* favorable to an accused upon request violates due process where the

---

[2] The government's argument that *Pelullo* is inapplicable because it does not address whether a defendant can obtain notes is puzzling. (Dkt. 83 at 12.) The Court in *Pelullo* did not discuss this question because it assumed the obvious: notes "clearly…ha[ve] potential impeachment value to the defense and, thus, constitute[] *Brady* evidence." *United States v. Pelullo*, 105 F.3d at 123.

[3] Equally puzzling is the government's argument that *Anderson* does not apply because witnesses in *Anderson* explained to the Court that FBI agents did not accurately record their statements. (Dkt. 83 at 11.) As explained at-length in the Discovery Motion and throughout this brief, Mr. Roderick has informed this Court, through his declaration and through his counsel's correspondence with the government, that the 302 does not accurately reflect his statements.

12

evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."). Further, by failing to address the substance of Mr. Ellerman's objections to the misrepresentations in the Roderick 302 or to correct the record after being told the 302 is inaccurate, the government has demonstrated that it either does not understand or is willfully ignoring the exculpatory nature of the mischaracterizations identified by Mr. Ellerman. The government cannot now abdicate its discovery responsibilities by arguing that the discrepancy is immaterial or not favorable to the defense—it must err on the side of disclosure of potentially exculpatory materials, even if it ultimately disagrees that those materials are meaningfully exculpatory.

### IV.     *In Camera* Review is Unnecessary.

Tacitly conceding that Mr. Benjamin has articulated a particularized, factual basis for disclosure of the grand jury transcript and the 302 materials, the government now offers *in camera* review in lieu of simply producing the documents. (Dkt. 83 at 7-8.) *In camera* review of either the grand jury transcript or the 302 Materials would be a waste of judicial resources, especially given the minimal need for secrecy at this late stage, and the Court has already entered a Standing Order Governing Discovery that authorizes disclosure of grand jury materials to Mr. Benjamin. *See United States v. Silva*, 745 F.2d 840, 846 (4th Cir. 1984) ("[T]he grand jury had finished its deliberations, sharply diminishing the fear of any effect upon its ability to actively seek the truth"); *see also State of Wis. v. Schaffer*, 565 F.2d 961, 967 (7th Cir. 1977) ("Once a grand jury has completed its work, indictments having been brought, the reasons for secrecy become less compelling."). Mr. Benjamin has been able to show particularized need for disclosure because he is intimately familiar with the facts giving rise to the discrepancy in the Roderick 302s and the exculpatory nature of the mischaracterization of Mr. Roderick's statements. Upon undertaking *in camera* review, the Court may ultimately need to request

additional briefing or other evidentiary submissions to determine the significance of any potential exculpatory evidence from the 302 Materials or the effect of Agent Hawkins' statements on the grand jury. Far from increasing efficiency, *in camera* review simply would invite a more prolonged dispute and additional briefing, especially when the Court has *already* authorized disclosure of grand jury materials to Mr. Benjamin via the case's Standing Order Governing Discovery. This is a waste of judicial resources when the government could simply disclose the requested materials. This is especially true for the grand jury transcript, which the government acknowledges will likely be produced eventually pursuant to the Jencks Act.

Moreover, contrary to the government's argument, there is no rule in the Fourth Circuit requiring *in camera* review here. The cases the government cites to argue that *in camera* review is required here involved requests for grand jury materials under *Brady*—not, as here, under Rule 6(e)—where the defendant had not already made a "particular showing of the exact information sought and how it is material and favorable." *See United States v. King*, 628 F.3d 693, 703 (4th Cir. 2011); *see also United States v. Martinez*, 2021 WL 1784614, at *16 (E.D. Va. May 5, 2021). Further, neither case discussed a situation where, as here, the court had already authorized disclosure of grand jury materials to the defendant, obviating the need for maximal grand jury secrecy. *See Martinez*, 2021 WL 1784614, at *16 (requiring *in camera* review of potential *Brady* material to "maintain[ ] the secrecy of the Grand Jury and its witnesses.").

Nor does the government offer a single practical reason not to turn over the material Mr. Benjamin seeks. Indeed, the government contends that Mr. Benjamin "will receive the grand jury transcripts in this matter" when it deems appropriate, essentially conceding that there is no reason for the government not to disclose it now. (Dkt. 83 at 1.) Rather, the government seeks to strategically delay disclosure and impose an additional burden on this Court, despite

acknowledging that "nothing in the Jencks Act prevents the government from voluntarily disclosing covered material prior to trial." *United States v. Lewis*, 35 F.3d 148, 151 (4th Cir. 1994). Even so, Mr. Benjamin is not seeking disclosure under the Jencks Act, but pursuant to Rule 6(e) (in the case of the grand jury transcript) and *Brady/Giglio* (with respect to the 302 Materials). The fact that the grand jury transcript may eventually be disclosed as Jencks material only removes any practical reason the government may have for maintaining sole possession of the grand jury transcript now.

Therefore, the Court should order the government to disclose the grand jury transcript and 302 Materials to Mr. Benjamin because he has shown particularized need and because the interests of judicial economy support disclosure. If the Court prefers to procced with *in camera* review, however, Mr. Benjamin requests an *ex parte* hearing before the Court in advance of its review to discuss the potential exculpatory information Mr. Benjamin seeks.

## CONCLUSION

The government has an obligation to produce potentially exculpatory evidence. It knows that a central piece of the Roderick 302 does not accurately represent Mr. Roderick's statements or beliefs, according to Mr. Roderick. Despite the claim that it takes its discovery obligations "seriously," (Dkt. 83 at 15) the government refuses to correct this error, undermining Mr. Benjamin's due process rights. Accordingly, the Court should: (1) order disclosure to the defense of the grand jury transcript, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii); and (2) order production to the defense of the 302 Materials, pursuant to Rule 16, *Brady*, and *Giglio*.

Dated: August 31, 2022

                                              Respectfully submitted,

                                              */s/Andrew B. Moorman, Sr.*
                                              MOORMAN LAW FIRM, LLC
                                              416 East North Street 2nd Floor

        Greenville, South Carolina 29601
        864-775-5800
        andy@andymoormanlaw.com
        Federal ID # 10013

        William M. Sullivan, Jr.
        Thomas C. Hill
        Patrick Hovakimian
        PILLSBURY WINTHROP SHAW PITTMAN LLP
        1200 Seventeenth Street, NW
        Washington, DC 20036
        Phone: 202-663-8027
        wsullivan@pillsburylaw.com
        thomas.hill@pillsburylaw.com
        patrick.hovakimian@pillsburylaw.com
        *Admitted Pro Hac Vice*

        *Counsel for Defendant Jeffrey Benjamin*