IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 3:21CR525 |
| v. ) | |
| ) | **MOTION FOR** |
| ) | **RECONSIDERATION OF ORDER** |
| JEFFREY ALAN BENJAMIN ) | **DENYING MOTION TO COMPEL** |
| ) | **DISCOVERY OF DOCUMENTS** |
| Defendant. ) | **RELATED TO THE FBI'S** |
| ) | **INTERVIEW OF DANIEL** |
| ) | **RODERICK** |
| ) | |

Defendant Jeffrey Alan Benjamin moves for reconsideration of this Court's Order (Dkt. 127, "Order") denying his Motion to Compel Discovery of Documents Related to the FBI's Interviews of Daniel Roderick (Dkt. 75, "Motion"). A decision on an interlocutory motion may be reconsidered and reversed for "for any reason [the Court] deems sufficient." *Monster Daddy, LLC v. Monster Cable Prod., Inc.*, No. 6:10-civ-1170-MGL, 2013 WL 3337828, at *2 (D.S.C. July 2, 2013) (internal citations and quotations omitted). Here, the Court's factual findings about Agent Hawkins' notes of the Roderick interviews support granting the Motion, because these notes, as we now know from the Court's own review, directly contradict what Agent Hawkins subsequently documented in his 302 about a central issue of this case. Denying the Motion deprives Mr. Benjamin of his due process rights under *Brady* and his discovery rights under Rule 16.

The Motion sought discovery of "any notes or other documents regarding the FBI's interviews of Mr. Roderick, to assess them for material exculpatory and impeachment evidence," under *Brady* and Rule 16. *Id.* at 2. The Motion was brought and based on evidence that the FBI's memoranda of Mr. Roderick's interviews ("Roderick 302s") are inaccurate. *See id.* at 18-

22. Specifically, the Roderick 302s repeatedly assert that Mr. Roderick believed he was "lied to" by Mr. Benjamin, *see* Dkt. 49-2 at 5, 9, but Mr. Roderick and his counsel have contradicted that characterization of what Mr. Roderick actually said, *see* Dkt. 48-14 at ¶ 12 (D. Roderick Declaration); Dkt. 56-2 (W. Ellerman email).

The Court's *in camera* review of Agent Hawkins' notes of the Roderick interviews found that they do not mention Mr. Roderick believing that he had been "lied to" by Mr. Benjamin. At the February 22 hearing, the Court stated that it had "looked at the agent's notes," found them to be largely "illegible," but still analyzed them and found "none of the information that you were concerned about being there." Exh. A (Transcript of 2-22-23 Hrg. at 3:20-25, 4:1). When asked for clarification whether the notes reflected that "Mr. Roderick believed Mr. Benjamin lied or deceived him," Exh. A at 4:17-18, the Court reiterated that, "in the . . . notes, [it] did not see anything that related one way or another to that," *id.* at 5:1-3.

Because Agent Hawkins' notes do not reflect the Roderick 302s' assertion that Mr. Roderick believes he was "lied to" by Mr. Benjamin, they are exculpatory and material to the defense—and therefore discoverable, as sought by the Motion.[1] Indeed, the Roderick 302s have now been found to be inconsistent with the agent's underlying notes on the essential issue in the case—whether Mr. Benjamin misled anyone. Moreover, the purported lie in the Roderick 302s—whether a "rebaseline" of the schedule was occurring—is the subject of false statements alleged in the Indictment. *See* Superseding Indictment at ¶¶ 38, 42-43, 58, 63(j).

---

[1] Although the Court declined to make a factual finding that Mr. Roderick and his counsel are correct that he never said he believed he had been lied to by Mr. Benjamin, Exh. A at 17:13-14 ("That's not my job to do that."), such a finding is unnecessary to resolve the issue of whether Agent Hawkins' notes are accurately reflected in the final 302s. On the relevant question of whether the notes align with the 302s, the Court clearly found that they do not. *See id.* at 17:14-16 ("I looked at those materials to see if, in fact, there was testimony that Mr. Sullivan suspected was there, and it was not.").

2

It is also significant that the Roderick 302s underwent a long process of revision between the interview notes and the final 302s.  The FBI first interviewed Mr. Roderick on June 17, 2021, and Agent Hawkins drafted the 302 on June 18, 2021, but did not finalize it until September 9, 2021.  The second Roderick interview was on July 14, 2021, and Agent Hawkins drafted the 302 11 days later, on July 25, 2021, but did not finalize it until September 23, 2021.  *See* Dkt. 75 at 2-3.  On September 22, 2021—after finalizing the first but before finalizing the second—Agent Hawkins "reviewed his draft 302s of Mr. Roderick's interviews with both Mr. Roderick and his counsel," according to the government.  Dkt. 83 at 2.  Before reviewing any of the Roderick 302s with Mr. Roderick or his counsel, however, Agent Hawkins testified to the grand jury; and the grand jury indicted Mr. Benjamin on August 18, 2021.  *See* Dkt. 83 at 2.  The fact that, according to the Court, the notes omit a key piece of alleged "evidence" against Mr. Benjamin that nevertheless mysteriously appears in the "finalized" 302, coupled with the fact that over two months passed between the interview and finalizing the 302, undermines the legitimacy of this prosecution and exculpates Mr. Benjamin.

Ultimately, if Mr. Roderick—purportedly a "critical Government witness," Dkt. 48 at p. 21 fn9—had told the FBI that the target of its investigation had "lied to" him, that information would be clearly and distinctly recorded in the notes of the interview.  That Agent Hawkins' notes do not support—indeed contradict—the Roderick 302s goes to the heart of the government's case against Mr. Benjamin.  As a result, Agent Hawkins' notes of the Roderick interviews are "exculpatory" evidence under *Brady*.  The notes' lack of support for the Roderick 302s directly undermines and impugns the reliability and integrity of the FBI's investigation and records—including specifically as they relate to Mr. Benjamin's truthfulness with his supervisors about aspects of the purported fraudulent conspiracy, like the schedule rebaseline—which are

3

issues that may "make the difference between conviction and acquittal" at trial. *United States v. Bartko*, 728 F.3d 327, 338 (4th Cir. 2013). Similarly, under Rule 16, the inconsistency between Agent Hawkins' notes and the Roderick 302s on the central issue of Mr. Benjamin's truthfulness makes the notes "material to the defense" in "aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010). The notes may also play "an important role in uncovering admissible evidence" about the misguided investigation that led to baseless charges against Mr. Benjamin. *Id.*[2] The notes, when viewed in the context of the Mr. Roderick's declaration and Mr. Ellerman's email that also contradict the Roderick 302, are thus of major importance to the defense.[3]

Granting the Motion—especially because of the finding of a material inconsistency between Agent Hawkins' notes and the Roderick 302s—affirms Mr. Benjamin's constitutional due process right to discover exculpatory evidence, as well as of his right under Rule 16 to discover evidence that is material to his defense. For all these reasons, the Court should grant reconsideration of its Order (Dkt. 127) and should order production to the defense, under *Brady* and Rule 16, of any notes taken by attendees at the FBI's interviews of Mr. Roderick.

                                            Respectfully submitted,

                                            */s/Andrew B. Moorman, Sr.*
                                            MOORMAN LAW FIRM, LLC
                                            416 East North Street 2nd Floor

---

[2] For the same reasons, as described in the Motion, other documents and communications related to the preparation of the Roderick 302s are also likely to be exculpatory and material to the defense. *See* Dkt. 75 at 20-22.

[3] Moreover, the illegibility of the notes is itself exculpatory because it undermines the reliability of the FBI investigation. There is no reason to believe that Agent Hawkins' handwriting in the Roderick notes was worse than his normal notetaking. Consequently, the entire case against Mr. Benjamin may be based on FBI 302s written weeks and months after the relevant interviews with no reliable basis. *See* Exh. A at 4:11-13 ("Really, I wish I could show you the agent's notes, because I want you to believe just how illegible they are."); Exh. B. (Sentencing Hearing Transcript, *United States v. Byrne*, No. 3:20-cr-00335 (Mar. 8, 2023)) at 12:12-19 (remarking on illegibility of Agent Hawkins' notes).

Greenville, South Carolina 29601
864-775-5800
andy@andymoormanlaw.com
Federal ID # 10013

William M. Sullivan, Jr.
Thomas C. Hill
Patrick Hovakimian
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Phone: 202-663-8027
wsullivan@pillsburylaw.com
thomas.hill@pillsburylaw.com
patrick.hovakimian@pillsburylaw.com
*Admitted Pro Hac Vice*

*Counsel for Defendant Jeffrey Benjamin*

5