# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 3:21CR525 |
| ) | |
| v. ) | **Motion to Dismiss for Grand Jury Bias** |
| ) | |
| JEFFREY ALAN BENJAMIN ) | |
| ) | |
| Defendant. ) | |
| ) | |

## INTRODUCTION

Defendant Jeffrey Alan Benjamin moves this Court to dismiss the superseding indictment (Dkt. No. 129, "Superseding Indictment" or "SSI") because it was returned by a grand jury comprised, at least in part, of the same individuals it alleges to be victims of the charged crimes. According to the SSI, "ratepayers" of South Carolina Electric & Gas Company and Santee Cooper (collectively, "Owners") were victims of the alleged crimes and suffered "billions of dollars of losses." *Id.* at ¶ 1. The SSI was returned by a grand jury in Columbia, where roughly 60% of the population are ratepayers of the Owners and thus victims in the words of the SSI. The statistical possibility that none of the grand jurors was alleged to be a victim of the SSI is effectively zero. Instead, it is to be expected that most of the grand jury—like most of the jury pool—were ratepayers. Despite a request from the defense to explain how alleged victims were screened from the grand jury, the government has denied that it matters whether victims were empaneled on the grand jury. Mr. Benjamin's Fifth Amendment right to an unbiased grand jury has thus been violated by the SSI, and dismissal of the defective indictment is required.

## **BACKGROUND**

On August 18, 2021, Mr. Jeffrey Benjamin was charged with conspiracy, wire fraud, securities fraud, and other offenses for allegedly using "intentional and material misrepresentations and omissions" to "deceive[] the Owners, regulators, investors, and ratepayers," which "resulted in billions of dollars of loss to the Owners, ratepayers, and investors." Dkt. 2 at ¶ 1 (emphasis added). Allegedly, "[f]rom at least in or around 2015," Mr. Benjamin "engaged in a scheme, plan, and artifice to defraud the Owners and ratepayers to obtain money and property …." *Id.* at ¶ 60 (emphasis added). Further, the indictment alleged that Mr. Benjamin conspired "to provide false representations and omit necessary facts in disclosures … to ratepayers …." *Id.* at ¶ 62 (emphasis added).

On February 8, 2023, Defendant filed a motion to transfer venue from the Columbia Division due to juror bias among the juror pool in Columbia arising from the indictment's allegation that the victims of the purported conspiracy included the Owners' ratepayers, who make up approximately 60% of the population in the Columbia jury pool. *See* Dkt. No. 116-1 at 4 ("Venue Motion"). Specifically, the Columbia Division uses Jury Pool B, which includes Aiken, Columbia, Orangeburg, and Rock Hill counties—all of which are served by SCANA. *See* SC Electric Utility Service Areas (online at https://arcg.is/1Sr8ue). Thus, residents of those counties—if they use electricity—are ratepayers of one of the Owners. The population of those counties accounts for roughly 60% of the population in Jury Pool B. *See* U.S. Census (2020).

On February 22, 2023, the Court held a hearing on the Venue Motion. The government opposed transferring venue and argued: "We can through voir dire and through jury selection, absolutely weed out people who have – who cannot be fair and impartial or people who have personal relationships to any of the entities that were on site in Jenkinsville. … We can do that

2

here in Columbia." Exh. A (Feb. 22, 2023, Hearing Transcript at 22:22-25 – 23:1-3).  Although the Court found that "with enough time and effort," it would be possible to "draw a jury from this section of the state and give Mr. Benjamin an impartial jury," the Court concluded that "the safer and surer way to do that is to draw the jury from upstate" and therefore granted the motion. *Id.* at 25:1-6; *see also* Dkt. No. 127.

Also during the February 22 hearing, the government stated that a "superseding indictment is imminent." *Id.* at 26:6-7.  In fact, on February 21, 2023, the day before the venue hearing before this Court on February 22, and notwithstanding the government's acknowledgment that for trial purposes those prospective jurors who had personal relationships with any of the affected utilities would need to be excused, the government chose to present its superseding indictment to a Columbia grand jury without making any attempt to "weed out" any impacted grand jurors.  *See* Exh. B (B. Andrews email to W. Sullivan).  At the hearing, the government did not inform the Court that the SSI had already been returned by a Columbia grand jury, notwithstanding the Court's comments at that hearing regarding the difficulty of excluding biased jurors in Columbia.  *See* Exh. A at 25:2-3.  Later that day, the government filed the SSI. *See* Dkt. No. 129.

Like the original indictment, the SSI alleges that Mr. Jeffrey Benjamin used "intentional and material misrepresentations and omissions" to "deceive[] the Owners, regulators, investors, and <u>ratepayers</u>," which "resulted in billions of dollars of losses to the Owners, <u>ratepayers</u>, and investors." Dkt. 2 at ¶ 1 (emphasis added).  And the SSI alleges that that Mr. Benjamin conspired "to provide false representations and omit necessary facts in disclosures … to <u>ratepayers</u> …." *Id.* at ¶ 62 (emphasis added).

On March 2, 2023, the defense emailed the government to express concern that the second grand jury was drawn from the Columbia juror pool where nearly 60% of the population are ratepayers that the SSI alleges to be victims of the purported conspiracy. *See* Exh. B ("We are also concerned about 'victim' status bias and pretrial publicity among the grand jurors, so we need to understand what steps were taken to ensure the new Grand Jury's impartiality"). Further, the defense posed specific questions to the government regarding the procedures used to screen for bias when the second grand jury was empaneled, including whether potential grand jurors were asked if they were SCANA or Santee Cooper ratepayers or investors. *See* Exh. B.

On March 27, 2023, the government responded by characterizing all the questions as "generalized discovery into grand jury proceedings" and refusing to answer any of them. Exh. B (Mar. 27, 2023, Email from B. Andrews to W. Sullivan). Further, the government stated that this Court's decision to hold the trial in Greenville "has no impact" on the sufficiency of the SSI, but it did not represent that any effort was made to exclude potentially biased grand jurors. *Id.* Instead, the government replied, "Judge Lewis is free to ask these questions or review the transcript at her discretion," but "there is no rule or constitutional obligation that allows your client to do the same." *Id.* The defense wrote back the next day to confirm that the government was not opposed to a motion requesting *in camera* review of the second grand jury transcript. *See id.* (Mar. 28, 2023, Email from W. Sullivan to B. Andrews). On April 2, 2023, the government replied that it was opposed to a motion for *in camera* review, because it saw no purpose for such a review, and did not want "to add to Judge Lewis's growing list of case management duties."

**ARGUMENT**

I. **The Fifth Amendment Guarantees an Unbiased Grand Jury**

The Fifth Amendment guarantees "the right to indictment by an unbiased grand jury." *United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979) (citing *Costello v. United States*, 350 U.S. 359 (1956)); *see also United States v. Jefferson*, 546 F.3d 200, 313 (4th Cir. 2008) ("We have consistently adhered to Costello's guiding and settled principles."); *United States v. Burke*, 700 F.2d 70, 82 (2d Cir. 1983) ("When a person is brought before the grand jury and charged with a criminal offense, that individual is constitutionally entitled to have his case considered by an impartial and unbiased grand jury."); *United States v. Lawson*, 502 F. Supp. 158, 172 (D. Md. 1980) ("[D]efendants do have a constitutional right to an informed and unbiased grand jury.").

Indicting a defendant "will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo." *Serubo*, 604 F.2d at 817. Accordingly, "the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened." *Id*. Where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair," a presumption of prejudice arises, and the indictment must be dismissed. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988) (citing *Vasquez v. Hillery*, 474 U.S. 254 (1986); *Ballard v. United States*, 329 U.S. 187 (1946)).

II. **The Grand Jury that Returned the Superseding Indictment Was Biased by the Inclusion of Members also Alleged to Be Victims**

In granting the Venue Motion, the Court recognized that the Columbia jury pool's large population of alleged victims made the selection of unbiased jurors difficult. *See* Exh. A at 25:2-3. The government, however, appears to have made no effort to exclude alleged victims from

5

the grand jury, but instead views their inclusion as rendered harmless by transferring the trial venue. *See* Exh. A.[1] To the contrary, the Fifth Amendment guarantees Mr. Benjamin an unbiased grand jury, which he has thus far been denied in these proceedings based on indictments returned by Columbia grand juries comprised mostly of alleged victims.

The second grand jury, like the original, was convened in Columbia, where a majority of the population are among the ratepayers alleged by the SSI to be victims of the purported conspiracy. There is no evidence that any steps were taken to ensure that the second grand jury did not include any individuals alleged by the SSI to be victims. Indeed, with nearly 60% of the population of Columbia's jury pool being ratepayers of the Owners, it is statistically certain that some of the grand jurors were victims of the alleged crimes and likely that most of them were victims. The government's disregard for the concerns raised by the defense only reinforces the likelihood that ratepayers served on the grand jury in the same proportion as they appear in the jury pool.[2] Further, merely asking the victim of a crime whether he could set aside his bias and assess the proposed indictment impartially would be insufficient—being <u>the</u> victim of the alleged crime would inherently bias anyone on the grand jury.[3] The composition of the second grand

---

[1] The government's citation to *United States v. Lindh* is misguided, as that case dealt with the Sixth Amendment right to a fair trial, not the Fifth Amendment right to an unbiased grand jury. *See* 212 F. Supp. 2d 541, 548 (E.D. Va. 2002). Moreover, the source of bias in *Lindh* was pre-trial publicity, not the inclusion of alleged victims on the grand jury. Unlike Lindh, the defendant here is not arguing that "he cannot obtain a fair trial anywhere in the country" in violation of the Sixth Amendment, but rather that an unbiased grand jury could and must be empaneled in accordance with the Fifth Amendment. *Id.* The court in *Lindh* did not address that argument.

[2] In addition, given Defendant's concerns outlined elsewhere that the second grand jury proceeding happened during a seriously condensed timeline—with a grand jury presumably empaneled for other purposes, not specifically this investigation—there is a high likelihood that no screening procedures were employed to screen out ratepayers, investors, and employees of the Owners likely to be biased by the terms of the SSI. *See generally* Motion for Disclosure of Ministerial Materials from the Second Grand Jury Proceeding, Case No. 3:21-CR-525-MGL.

[3] The bias present here is thus fundamentally unlike the bias that can arise from prejudicial press coverage, and there is no room to question whether the alleged victims—unlike individuals who may or may not have been exposed to press coverage that may or may not have prejudiced them—were biased in violation of the Fifth Amendment. *Cf. United States v. Mandel*, 415 F. Supp. 1033, 1061-62 (D. Md. 1976).

jury was thus systematically and overwhelmingly biased by the terms of the superseding indictment that they were asked to return.

The inclusion of biased grand jurors—the victims of the alleged crimes—on the grand jury is a structural defect in the SSI that requires dismissal. As the Supreme Court has held, "[w]hen constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm." *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986). The systemic failure to exclude alleged victims from the grand jury is thus an error like systemic discrimination in creating the grand jury pool, which requires dismissal without resort to harmless-error review. *See id.* ("[W]e simply cannot know that the need to indict would have been assessed in the same way by a grand jury properly constituted."); *see also Ballard*, 329 U.S. at 195 ("The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts."). Dismissal is the only remedy to correct for having the victims of the alleged crimes on the grand jury, because "[a] properly constituted grand jury may or may not return new indictments." *Ballard*, 329 U.S. at 196.

## CONCLUSION

For the reasons stated herein, Defendant respectfully requests that this Court dismiss the Superseding Indictment to protect Mr. Benjamin's Fifth Amendment rights.

Respectfully submitted,

/s/Andrew B. Moorman, Sr.
Moorman Law Firm, LLC
416 East North Street 2nd Floor
Greenville, South Carolina 29601

864-775-5800
andy@andymoormanlaw.com
Federal ID # 10013

William M. Sullivan, Jr.
Thomas C. Hill
Patrick Hovakimian
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Phone: 202-663-8027
wsullivan@pillsburylaw.com
thomas.hill@pillsburylaw.com
patrick.hovakimian@pillsburylaw.com
Admitted Pro Hac Vice

*Counsel for Defendant Jeffrey Benjamin*

May 31, 2023